```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                      AT CHARLESTON
```

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,

    Plaintiff,

v.                              Civil Action No. 2:14-10340

PAUL MOORE and
BARBARA NICHOLS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is a motion for summary judgment filed July 10, 2015, by defendant Barbara Nichols.

I.

Defendants Paul Moore ("Moore") and Barbara Nichols ("Nichols"), husband and wife, have an interest in a home, titled in Nichols' name, and its contents, situate at 38 Church Street in Blackberry City, West Virginia. On May 30, 2013, Moore attempted to contact American National's local agent, Theresa Evans, by phone regarding a homeowner's policy. He reached Evans' assistant, Lesley Reeves ("Reeves"). Reeves asked Moore certain pre-application questions during the telephone call. Moore has testified that he was not asked whether he had previously been

convicted of a felony.  Reeves contends otherwise, noting that the form she was using at the time has the word "no" circled after the question "Been Convicted of any type of Felony[?]" (Pl.'s Mot. Summ. J. Ex. C.).

After Reeves mailed Moore and Nichols certain policy proposals, Moore contacted her and advised they wished to take out a policy.  Reeves prepared a formal American National application for coverage using the information she learned from Moore on May 30, 2013.  She mailed the four-page, 22-question, pre-completed application to Moore and Nichols for their signatures, attaching "sticky notes" indicating where they were to sign, but not indicating they needed to read the document.  Question number five on page two asked "Have you or any member of your household ever been convicted of a felony or drug possession."  (Pl.'s Mot. Summ. J. Ex. D at 2.).  Reeves checked the box next to the word "No." (Id.).  Moore and Nichols signed the application and returned it.

On October 19, 2013, Moore learned of a fire at the insured premises after being contacted by a neighbor.  The home was a total loss.  Moore called American National's claims line the same day to report the fire.  Moore believed the fire was the result of arson and noticed his fireproof safe was missing.  On December 17, 2013, the insureds presented a Sworn Statement in Proof of Loss in the amount of $112,500, including the policy

2

limits of $75,000 for the dwelling and $37,500 for the personal property.

Four months after the fire, Moore and Nichols received a February 27, 2014, letter from American National voiding their policy. American National had learned by investigation that Moore was a convicted felon, having two prior convictions for robbery.

On February 14, 2014, American National instituted this declaratory judgment action pursuant to 28 U.S.C. § 2201(a). It seeks an order voiding the policy under West Virginia Code section 33-6-7 based upon what it contends was Moore's false response respecting his prior felony convictions. Moore denies that he provided any false response. Diversity jurisdiction of this action is proper inasmuch as plaintiff and defendants are diverse, and the amount in controversy exceeds the $75,000 amount as required under 28 U.S.C. § 1332(a).

This action had reached its final settlement conference on April 27, 2015, when the court determined that discovery would be reopened so new issues raised in defendants' jury instructions could be addressed. These included the contention that one of the defendants could be found to be an "innocent co-insured," entitled to recovery under the American National policy, if only the other was found to have committed a material misrepresentation in the application.

In her summary judgment motion, Nichols contends that she is entitled to judgment as a matter of law on the following issues: (1) that the policy issued to defendants by American National has less favorable coverage language than the West Virginia Standard Fire Policy and thus should not be binding, (2) that Nichols did not commit a material misrepresentation in the application for the American National policy, and (3) that Nichols is an innocent co-insured and entitled to coverage under the American National policy, regardless of any misrepresentation Moore made.  American National responds that (1) its action is not based on the language in the policy, but on West Virginia law, (2) that there is an issue of fact whether Nichols committed a material representation, (3) and that Nichols cannot recover as an innocent co-insured because American National seeks to void the policy *ab initio*, rather than avoid coverage under a policy exclusion.[1]

---

[1] American National also argues in its response that the first two issues are untimely raised, claiming that Nichols' arguments on these issues were not discussed in the pretrial order and were not among the issues for which discovery was reopened after the final settlement conference.  (Pl.'s Resp. 3-4.); see McLean Contracting Co. v. Waterman Steamship Corp., 277 F.3d 477, 480 (4th Cir. 2002) ("Failure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried.").  However, these issues are related to the argument that Nichols is an innocent co-insured, which is one of the issues for which discovery was reopened.  Given the court's determination that Nichols is not entitled to judgment as a matter of law on these issues for other reasons, the court need not decide whether these issues are properly raised.

## II.

**A.   Governing Standard**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

B.  The American National Policy Language Deviation from the Standard Fire Policy

Nichols first asserts that the West Virginia Standard Fire Policy ("Standard Policy") language on exclusions in coverage due to fraud or misrepresentations should control, because the relevant language in American National's policy is less favorable to the insured.  Like many states, West Virginia requires by law certain minimum requirements for fire insurance policies; currently West Virginia requires adherence to the 1943 New York Standard Fire Policy.  W. Va. Code § 33-17-2. This section provides, in pertinent part:

> No policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, which is designated as the West Virginia standard fire policy; except that with regard to multiple line coverages providing casualty insurance combined with fire insurance this section shall not apply if the policy contains, with respect to the fire portion thereof, language at least as favorable to the insured as the applicable portions of the standard fire policy and such multiple line policy has been approved by the commissioner.

Id.  The Standard Policy's exclusion for fraud or concealment by an insured provides:

> [t]his entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

(Standard Policy at lines 1-6.).

7

Nichols asserts that a difference between the Standard Policy and the American National policy causes the latter to be less favorable than the Standard Policy. (Def.'s Mem. Law Supp. Mot. Summ. J. 3.). American National responds that the identified distinction is irrelevant, because it is not attempting to avoid coverage based on a provision of the policy, but rather to have the entire policy declared void *ab initio* under West Virginia Code section 33-6-7(b) and (c) because of defendants' alleged misrepresentations in the application for the policy. (Pl.'s Resp. Def.'s Mot. Summ. J. 5.).

American National is correct. Inasmuch as American National is not relying on the language of the American National policy in this case, Nichols seeks judgment as a matter of law on a question not at issue in this action  The issue is thus moot.

C.   Material Misrepresentation by Nichols

Nichols next asserts that, as a matter of law, she did not commit a material misrepresentation by signing the insurance application without reading it. Whether an insurance company can void a policy due to misrepresentations by the insured in the application is governed by statute in West Virginia:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of

> facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> * * *
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

W. Va. Code § 33-6-7(b) and (c). In interpreting what constitutes materiality, the Supreme Court of Appeals of West Virginia has held:

> [I]n order for a misrepresentation in an insurance application to be material, it must relate to either the acceptance of the risk insured or to the hazard assumed by the insurer. Materiality is determined by whether the insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

Syl. Pt. 5, Powell v. Time Ins. Co., 181 W. Va. 289, 382 S.E.2d 342 (1989). Materiality under section 33-6-7 should be determined by "whether a reasonably prudent insurer would consider a misrepresentation material to the contract." Id. at Syl. Pt. 6. Nichols argues both that she did not commit a misrepresentation and that the misrepresentation she is alleged to have committed is not material.

9

1. Whether Nichols Committed a Misrepresentation

On Nichols' first argument, she relies heavily on a footnote from a West Virginia Supreme Court case stating that the court adopted the "majority rule that the insured is not presumed to know the contents of an adhesion-type insurance policy delivered to him." Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 177 W. Va. 734, 741, 356 S.E.2d 488, 495 n.6 (1987). Relying on this principle, and noting that no one from American National spoke directly with her about the policy, that the "sticky notes" on the application directed her where to sign and that Reeves did not instruct her to read the completed application, she argues that her failure to read the application was, as a matter of law, not a misrepresentation.[2] (Def.'s Mem. 15.).

---

[2] Nichols cites to Morrison v. Allen, 338 S.W.3d 417, (Tenn. 2011), as a persuasive authority. While the decisions of another state's high court can be instructive, Morrison dealt with a post-verdict appeal where the trial court had determined that the defendant insurance agent failed to ask plaintiff a question on the insurance application and the plaintiff had not read the application containing the incorrect answer the defendant had marked for that question. In the instant case, it is not established fact that Reeves failed to ask Moore about his criminal record, nor is it established that Nichols did not read the application. Nichols also cites to West Virginia's definition of separate property at West Virginia Code section 48-1-237 and a California Court of Appeal case; neither of these authorities has any bearing on the merits of Nichols argument, so they do not merit discussion.

American National counters that there is a factual dispute over whether Nichols actually read the application. American National points to Nichols' deposition testimony indicating she was unsure whether she had read the application:

> Q. Okay. So it's just as possible that you did read over it before you signed it as saying that you didn't do that, correct?
> A. That is an absolutely fair statement, yes.
> Q. Okay
> A. I could have – could have or could not have.

(Pl.'s Resp. Ex. 1, Nichols Dep. 52:3-9.). American National also points to Nichols' signature on the insurance application on the page containing a certification that the included statements were true.[3] (Pl.'s Mot. Summ. J. Ex. D.). Viewing this evidence in the light most favorable to American National, the factfinder could determine Nichols actually read the application. As

---

[3] As to Nichols' argument that she had no duty to read the application, American National notes that the McMahon rule was announced in a footnote, and points to this court's analysis in Nowsco Well Service, Ltd. v. Home Insurance Co. that McMahon did not explicitly reverse the existing rule that "'[a] party to a contract has a duty to read the instrument.'" 799 F. Supp. 602, 610 (S.D.W. Va. 1991) (quoting Syl. Pt. 5, Soliva v. Shand, Morahan & Co., 176 W. Va. 430, 345 S.E.2d 33 (1986)), aff'd, 974 F.2d 1331 (4th Cir. 1992). The Supreme Court of Appeals of West Virginia has also declined to use McMahon to absolve an insured from the duty to read a policy where the language was not "too complex for the average person to understand." Arbogast v. Nationwide Mut. Ins. Co., 189 W. Va. 27, 31, 427 S.E.2d 461, 465 (1993). American National argues that, far from being a voluminous, adhesion-style contract, the document in this case was only a four page application. (Pl.'s Resp. 9.). Given that there is a factual dispute as to whether Nichols actually read the American National application, it is unnecessary to decide whether McMahon exempted her from the duty to read it.

Nichols' argument assumes that she did not read the application, a factual dispute remains as to whether she committed a misrepresentation.

### 2. Materiality of Nichols' Misrepresentation

Nichols also contends that her alleged misrepresentation was not material. She argues that Moore's felony convictions for robbery "in no way relates to the hazard assumed" for the American National policy. (Def.'s Mem. 16.).

American National responds that it has provided evidence sufficient to prove it would not have issued the policy to defendants. American National points to their underwriting guide which lists "[d]wellings owned or occupied by a person(s) convicted of a felony or drug possession" as "Ineligible Exposures." (Pl.'s Mot. Summ. J. Ex H at 1.). American National also cites to the affidavit of its Senior Underwriter Jason Buckert, in which he affirms that American National does not insure homes "occupied by a person(s) with a felony conviction" and that the company would have denied defendants' application if it had been informed of Moore's felonies. (Pl.'s Mot. Summ. J. Ex G.). Against Nichols' bald assertion that "a robbery conviction in no way relates to the hazard assumed for a fire/home owners policy," this evidence is more than sufficient to create an issue of fact.

Nichols also asserts that the "trial application" aspect of the American National application is ambiguous. In interpreting insurance policies, the West Virginia Supreme Court of Appeals defines ambiguity as language "reasonably susceptible of two different meanings" or "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. Pt. 1, Prete v. Merchants Prop. Ins. Co. of Indiana, 159 W. Va. 508, 223 S.E.2d 441, (1976). This court has applied the same principle to the interpretation of insurance applications. White v. Am. Gen. Life Ins. Co., 651 F. Supp. 2d 530, 542-43 (S.D. W. Va. 2009). The Supreme Court of Appeals of West Virginia has also explained that "[i]t is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence becomes a question of fact." Payne v. Weston, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995).

Nichols contends that the American National application is ambiguous because it allows for submission of a trial application if the applicant has a felony conviction, but American National's senior underwriting compliance auditor Jason Buckert testified that the company always denies applications from felons. (Def.'s Mem. 16-18.). She cites to syllabus point 4 of McMahon, which provides "that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor

13

of the insured," and argues that this discredits American National's evidence that they would not have issued Moore and Nichols a policy if they had known about Moore's felonies. (Def.'s Mem. 18.).

American National contends that the "Trial Application" language of its application is not ambiguous. American National asserts that there is no language in the contract that indicates a trial application will be approved. (Pl.'s Resp. 15.).

Using West Virginia's interpretation principles, the court does not find that the language "[m]ay submit a Trial Application with conviction date, type, and description" is ambiguous. (Pl.'s Mot. Summ. J. Ex. D.). Nichols' argument that the language is ambiguous is based not on the language itself, but on extrinsic evidence about American National's evaluation of trial applications. Under West Virginia law, extrinsic evidence only becomes relevant to the analysis of language that is determined to be ambiguous. Even assuming, arguendo, that the relevant language is ambiguous, its meaning would remain an issue of fact.

Because the foregoing issue is fact-bound, the court cannot find, as a matter of law, that Nichols did not commit a material misrepresentation.

D.   Nichols' Status as an Innocent Co-Insured

The final issue Nichols raises is that she is an innocent co-insured, entitled to recovery even if defendant Moore committed a material misrepresentation. Inasmuch as there is an issue of fact respecting whether Nichols made a material misrepresentation on the application, the matter is not susceptible for disposition as a matter of law.

### III.

Based upon the foregoing discussion, it is ORDERED that the motion for summary judgment be, and hereby is, denied.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: September 4, 2015

John T. Copenhaver, Jr.
United States District Judge